IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. 16-00207 SOM |
|---|---|---|
| Plaintiff, | ) | |
| | ) | ORDER DENYING "MOTION FOR BAIL PENDING APPEAL" AND ADDRESSING ARGUMENT THAT JURY INSTRUCTION ERRONEOUSLY DEFINED "INTIMIDATION" |
| vs. | ) | |
| | ) | |
| WILLIAM CLARK TURNER, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING "MOTION FOR BAIL PENDING APPEAL" AND ADDRESSING ARGUMENT THAT JURY INSTRUCTION ERRONEOUSLY DEFINED "INTIMIDATION"**

Defendant William Turner was convicted following a jury trial of having interfered with a flight attendant's performance of her duties. He was acquitted of two counts of assaulting other passengers on his flight. He was sentenced to three years of probation. His sentence included the requirement that he wear an electronic monitor for six months, and he has been wearing the electronic monitor for even less time. He cannot be out of radio frequency range for the electronic monitor without his Probation Officer's advance approval, meaning that he is confined to his home except to go to work or to other events preapproved by his Probation Officer. Turner has been on probation for about two months. He filed a timely appeal from the judgment entered in this case; that appeal is pending.

Before this court is Turner's "Motion for Bail Pending Appeal Pursuant to California Penal Code § 1272.1." *See* ECF No. 75. This court ignores the reference to the California Penal Code because, as Turner's counsel has conceded, Turner was convicted of a federal crime and is subject to federal law. *See* Turner's Reply, ECF No. 80, PageID # 339 (conceding that the California Penal Code is inapplicable and noting that the reference to the California Penal Code was a "clerical error"). The reference to "bail" is confusing, because Turner is on probation. As the Government notes in its written opposition to the motion, "bail" is relevant only when an individual is imprisoned. *See* ECF No. 77, PageID # 335. This court construes the request for "bail" as a request that Turner's probation conditions be modified by removing the electronic monitor condition. It is in the context of such a modification that this court considers the arguments raised by Turner's motion.[1]

### A. Turner's Request to Remove the Electronic Monitor Condition Is Denied.

This court denies the request to remove the electronic monitor condition. Removal of the condition is not supported by the record.

---

[1] At the hearing on this motion, the Government posited that Turner was seeking a stay of his probation sentence, a matter governed by Rule 38 of the Federal Rules of Criminal Procedure. The court does not read the moving papers as seeking a stay, and, at the hearing, Turner expressly denied that he was seeking a stay.

In seeking relief, Turner points out that he is not a flight risk and has so far been compliant with the terms of his probation. The court thinks that being compliant for two out of thirty-six months is simply insufficient to warrant a change. The ink is barely dry on his judgment, and it is highly unusual to modify probation terms based on such a short period. Rarely are conditions modified within the first year (sometimes the first half) of a term, and even then there must be some showing other than mere compliance. Turner does not even suggest that he is somehow being unduly prejudiced by any probation condition.

Although Turner argues that his short-lived compliance justifies a modification, the heart of his motion is his argument that the jury was wrongly instructed as to the "intimidation" element of the crime he was convicted of. The moving papers characterize this purported error as raising a substantial question on appeal. "Substantial question" is relevant to a motion for release on bail. *See* 18 U.S.C. § 3145(b)(1)(B) (noting that a defendant who has filed an appeal must be detained unless the judicial officer finds, among other things, "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" reversal, a new trial, a sentence not including a term of imprisonment, or a reduced sentence of imprisonment). *See also*

*United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985) (concluding that a "substantial question" is one that is "fairly debatable" or "fairly doubtful"). Although this court is considering the present motion as seeking a probation modification rather than bail, the court addresses the jury instruction issue to the extent Turner relies on it even in the modification context.

The court notes at the outset that this purported error would have to qualify as "plain error" for Turner to prevail on appeal. The definition of "intimidation" was expressly discussed with the attorneys by this court. Turner did not object to any jury instruction on grounds raised in the present motion. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Olano*, 507 U.S. 725, 732 (1993) (noting that "Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings'" (quoting *United States v. Young*, 470 U.S. 1, 15 (1985))); *United States v. Zhou*, 838 F.3d 1007, 1010 (9th Cir. 2016) (noting that the "ordinary rule in criminal cases . . . is

that 'plain error' review applies to arguments raised for the first time on appeal").

As the court understands Turner's argument, he is saying that the instruction on "intimidation" had two flaws. First, he says that the instruction erroneously defined "intimidation" as not requiring the flight attendant to have feared harm to herself. Turner reads the instruction as wrongly allowing a finding of "intimidation" if the flight attendant simply intervened between two passengers in a dispute. Second, Turner says that it was error for this court to define "intimidation" as including the flight attendant's doing of something she would not ordinarily have done, or failing to do something she would ordinarily have done. In Turner's view, this made "intimidation" mirror "interference," even though "intimidation" and "interference" are in separate elements of the crime.

To put Turner's arguments into context, the court quotes here the instruction given to the jury listing the elements of the crime:

> The defendant is charged in Count 1 of the indictment with interference with a flight attendant on or about March 14, 2016, in violation of Section 46504 of Title 49 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

5

> First, that the defendant was on an aircraft in flight in the special aircraft jurisdiction of the United States;
>
> Second, that the defendant intimidated a flight attendant of the aircraft; and
>
> Third, that such intimidation interfered with the performance of the duties of the flight attendant of the aircraft or lessened the ability of the attendant to perform those duties.

ECF No. 46, PageID # 144. The court also quotes here a companion instruction that was given to the jury explaining the "intimidation" element:

> A flight attendant may be "intimidated" by the use of words or actions that place the flight attendant in reasonable apprehension of bodily harm, either to the flight attendant or to another, or by the use of words or actions that make the flight attendant fearful or make that flight attendant refrain from doing something that the flight attendant would otherwise do, or do something that the flight attendant would otherwise not do, or interfere with or lessen the flight attendant's ability to do something.
>
> One person in a group can be intimidated by threats directed at the group in general. The government does not have to prove that the flight attendant was in fact frightened for her own physical safety in order to prove that the defendant performed the criminal act of intimidation. It is sufficient that the conduct and words of the defendant would place an ordinary, reasonable person in fear.

*Id.*, PageID # 146.

Turning first to the issue of whether the flight attendant had to fear for her own safety, this court notes that Turner offers no legal authority expressly stating that

6

proposition.  At most, Turner looks to two sources.  One source is the current version of the Eleventh Circuit's model jury instruction on interference with a flight attendant, which he argues does not expressly say that a flight attendant could have feared harm to another.  But the current version, which deletes an earlier reference to "intimidation" in the form of placing someone "in reasonable apprehension of bodily harm to that person or to another," does not actually preclude intimidation of a flight attendant in the form of her fear for another's well-being.

> The current model instruction states:
>
> To "intimidate" someone is to intentionally say or do something that would cause a person of ordinary sensibilities to fear bodily harm.  It's also to say or do something to make another person fearful or make that person refrain from doing something that the person would otherwise do -- or do something that the person would otherwise not do.

11th Cir. Pattern Jury Instructions (2016); *see also* 11th Cir. Pattern Jury Instructions (2010) (same).  The previous version of the model instruction states:

> The term "intimidate" has several meanings:  It means the use of words or actions to place another person in reasonable apprehension of bodily harm either to that person or to another. It also means the use of words or actions to make another person fearful or make that person refrain from doing something that the person would otherwise do, or do something that the person would otherwise not do.

11th Cir. Pattern Jury Instructions (2003).  Notably, these various editions of the model instruction for "intimidation" are not limited to one strict definition; instead, they provide examples of what it means to "intimidate" someone.  One example of intimidation is to make a person refrain from doing something that the person would otherwise do, which appears to encompass the situation in which a flight attendant refrains from doing something out of concern for another person's safety.

The annotations and comments to the 2010 and 2016 editions of the Eleventh Circuit model jury instruction are silent as to the reason for the change in language for this model instruction.  The annotations and comments do not cite to any case law as a basis for changing the language at issue (i.e., deleting "to another").  Possibly the Eleventh Circuit jury instructions committee was simply trying to track appellate language more closely without changing the substantive definition and examples in this model instruction.

Turner's other source is *United States v. Meeker*, 527 F.2d 12 (9th Cir. 1975), which this court and the attorneys had reviewed during trial.  Turner focuses on the statement in *Meeker* cautioning against seeing interference in "a case of a pilot unnecessarily sauntering back to the cabin to intermeddle officiously in a heated dispute between passengers."  *Id.* at 15.  Turner reads the discussion relating to that example as a

caution against finding intimidation when an airline employee is not the subject of a direct threat and is instead mediating between passengers. Turner appears to this court to be stretching the caution in *Meeker*. The Ninth Circuit was referring to an airline employee who was acting "unnecessarily" to "intermeddle officiously" in a passenger dispute. This is hardly a prohibition on finding intimidation when an employee engaged in performing her duties is doing her very duty in trying to deal with a dispute between passengers.

The court turns here to Turner's second argument--that "intimidation" is not the same as "interference" and requires more than doing something one would not ordinarily do or refraining from doing something one would ordinarily do. The Eleventh Circuit's current model instruction lists the elements of the crime as:

> (1) the Defendant was on an aircraft in flight in the United States;
>
> (2) the Defendant knowingly [assaulted] [intimidated] a flight-crew member or flight attendant of the aircraft; and
>
> (3) the [assault] [intimidation] interfered with or lessened the ability of the crew member or flight attendant to perform [his] [her] duties.

11th Cir. Pattern Jury Instructions (2016). That is, like the elements instruction this court gave, the Eleventh Circuit's model instruction requires a finding of "intimidation" as

9

separate from the requirement that the "intimidation" actually "interfered with or lessened the ability of" the flight attendant to perform her duties.

Both "intimidation" and "interference" refer to a change from what a person might ordinarily do or not do. While the concepts of "intimidation" and "interference" sound similar with respect to a victim's deviation from the victim's normal behavior, this similarity does not necessarily merge two separate elements of the offense. The element of "intimidation" focuses on how a flight attendant is affected, or influenced by, a defendant's conduct. The element of "interference" focuses on the effect of a defendant's conduct on the flight attendant's actions. Put simply, the elements involve the difference between "affect" and "effect." "Intimidation" goes to how the flight attendant is affected; "interference" goes to the "effect" on the flight attendant's duties. The model instruction suggests that the latter requires a causal connection between the defendant's conduct and the flight attendant's performance of her duties.

With respect to the "intimidation" element, *United States v. Tabacca*, 924 F.2d 906 (9th Cir. 1991), is helpful. That case examined 29 U.S.C. § 1472(j), a predecessor statute, and concluded that the defendant's conviction was supported by sufficient evidence that, after the flight attendant had asked

the defendant to put out his cigarette because he was in a no-smoking section, he used abusive language and grabbed and twisted her arm. *Id.* at 911. There was also sufficient evidence that this caused her to go to the galley of the plane several times to be alone and regain her composure throughout the course of the flight. *Id.* In other words, "intimidation" involved how the defendant's behavior affected the flight attendant.

Conceivably, what a flight attendant refrains from doing or what she does that she might not otherwise have done might be different for the "intimidation" and "interference" elements. For example, a flight attendant might rearrange passenger seating, which she might not ordinarily do but for a defendant's conduct. This action could go to the element of "intimidation," as the motivation for rearranging the seating would be to avoid a physical confrontation between passengers. That same flight attendant might not perform the usual beverage service because her time was taken up by rearranging passenger seating and monitoring the situation. Her failure to perform the beverage service would be an interference with the performance of her duties caused by the defendant's conduct. *See United States v. Hall*, 691 F.2d 48, 50 (1st Cir. 1982) (interpreting a predecessor statute and concluding that "the offense continues for at least as long as the crew are

responding directly, and in derogation of their ordinary duties, to the defendant's behavior").

Even when the same action by a flight attendant serves to satisfy both the "intimidation" and the "interference" element, those elements, as noted earlier in this order do not conflate, because "intimidation" focuses on the flight attendant's personal reaction, whereas "interference" focuses on the outward effect on the flight attendant's duties. For example, a passenger who refuses to comply with a flight attendant's request to sit down and remains standing in the aisle might "intimidate" a flight attendant into refraining from wheeling a beverage cart down the aisle. However, if at that very moment the plane flew into great turbulence such that the flight attendant herself had to take her own seat, the passenger might not be shown to have caused "interference" with the flight attendant's duty to wheel the beverage cart down the aisle.

A flight attendant who is "intimidated" by a defendant's conduct has her mindset of what she needs to do affected. *See Meeker*, 527 F.2d at 15 (noting that, to prove intimidation under the predecessor statute, "it is sufficient that the conduct and words of the accused would place an ordinary, reasonable person in fear"). *See, e.g.*, *United States v. Fontanez-Mercado*, 368 F. App'x 69, 72 (11th Cir. 2010) (per curiam) (noting that the defendant defied "the flight attendant

in an intimidating fashion" when he "jumped out of his seat in an intimidating manner" after having been told to sit down and after initially having reluctantly complied with that request); *United States v. Gilady*, 2003 WL 1826693, 62 F. App'x 481, at *2 (4th Cir. 2003) (per curiam) (unpublished opinion) (noting that two flight attendants testified that the defendant's behavior toward them, including "yelling at them while standing three to six inches away," was intimidating and that "they were scared that there would be a physical altercation"); *Tabacca*, 924 F.2d at 911 (noting that, after a physical confrontation with the defendant, the flight attendant performed her duties of providing meal and beverage services, but "she had to go to the lower galley of the aircraft several times to be alone and regain her composure" because she was "so upset by the confrontation" with the defendant).

While the elements of "intimidation" and "interference" are explained with similar language to describe certain behavior, that behavior must be viewed from two different perspectives. It is those different perspectives that render these elements distinct. *See United States v. Flores*, 968 F.2d 1366, 1371 (1st Cir. 1992) (interpreting a predecessor statute and concluding that the assault and interference elements are separate but essential elements of the charged

crime because an assault on a flight attendant does not necessarily interfere with that flight attendant's duties).

> **B. Turner's Alternative Request to Postpone the Electronic Monitor Condition and Payment of Any Fine Is Denied.**

This court turns to Turner's alternative request to postpone the electronic monitor condition and payment of any fine until the end of the probation period. As this court noted at the hearing held on August 7, 2017, postponing the electronic monitoring condition pending the appeal impedes certain management goals of the probation office, including ensuring that Turner complies with the terms and conditions of his sentence. Additionally, because it can take quite a bit of time before an appeal is completed, postponing the electronic monitoring would make no sense. Electronic monitoring is usually effective at the start of probation, so a defendant can earn the trust of the probation office and earn the right to more relaxed supervision. That goal would be subverted if electronic monitoring were delayed. Although defense counsel repeatedly said during the hearing on this motion that electronic monitoring was imposed simply to achieve a guideline sentence, this court was, in fact, well aware when imposing Turner's sentence that the sentencing guidelines were advisory. This court was concerned about possible anger management issues that might warrant closer monitoring at the start of probation,

when, given the time to adjust behavior, the benefits of prompt intervention would likely be greater than at the end.

There is no evidence in the record suggesting that maintaining the status quo with respect to the terms of Turner's probation will unduly prejudice Turner. This court therefore denies Turner's alternative request to postpone the electronic monitor condition and the payment of any fine.[2] The record before this court simply does not support granting this alternative request.

**IV.    CONCLUSION.**

The "Motion for Bail Pending Appeal" is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 8, 2017.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

*United States v. William Clark Turner*, Crim. No. 16-00207 SOM; ORDER DENYING "MOTION FOR BAIL PENDING APPEAL" AND ADDRESSING ARGUMENT THAT JURY INSTRUCTION ERRONEOUSLY DEFINED "INTIMIDATION."

---

[2] At the hearing, defense counsel also requested that certain other conditions of Turner's probation be modified. This court instructed counsel to contact Turner's supervising probation officer and get the probation officer's position. This court indicated that it would like to know more about the current factual circumstances of Turner's probation before modifying any condition.